**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JAMES E. RAINES,**

       **Petitioner,**

          **v.**

**WARDEN, NOBLE**
**CORRECTIONAL INSTITUTION,**

       **Respondent.**

**Case No. 2:25-cv-116**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Merz**

<u>**OPINION AND ORDER**</u>

In a September 24, 2025, Report and Recommendation (R&R, Doc. 16), the Magistrate Judge recommends that the Court dismiss Petitioner James E. Raines' Petition for Habeas Corpus (Doc. 3), with prejudice and certify that any appeal from an order of dismissal would be objectively frivolous. After obtaining an extension, Raines timely objected. (Mot. for Extension of Time to File Obj., Doc. 17; 10/1/25 Not. Order; Obj., Doc. 19). Following a preliminary review of those objections, the Court determined that they would be more appropriately resolved after further analysis by the Magistrate Judge. So the Court issued a Recommittal Order (Doc. 20), returning the matter to the Magistrate Judge for a Supplemental R&R. The Magistrate Judge has now issued that Supplemental R&R (Doc. 21), and Raines has filed a fresh set of objections, (Doc. 24).

For the reasons stated below, the Court **OVERRULES** Raines' objections (Doc. 19; Doc. 24), and **ADOPTS** the R&R and Supplemental R&R (Doc. 16; Doc. 21), as

modified below. Consistent with that, the Court **DISMISSES** Raines' habeas petition, (Doc. 3), **WITH PREJUDICE**.

## BACKGROUND

In early 2023, a Gallia County grand jury issued two indictments against Raines. (Doc. 16, #436–37). On February 15, 2023, the grand jury first indicted Raines on three counts of violating a protection order under Ohio Revised Code § 2919.27(A)(2). (*Id.* at #436). About two months later, on April 13, 2023, the grand jury separately indicted Raines on one count of arson under Ohio Revised Code § 2909.03(A)(1) and (D)(2)(b). (*Id.* at #436–37). Raines pleaded not guilty to all charges. (*Id.* at #437). After plea negotiations, however, Raines entered guilty pleas on the charges in both cases in exchange for the prosecutor dismissing pending charges in two other state criminal proceedings. (*Id.*). Raines received a twelve-month term of imprisonment for each count of violating a protection order, for a total of thirty-six months. (*Id.*). And he received a consecutive eighteen-month term of imprisonment for the arson conviction. (*Id.*).

Acting through new counsel, (*see* State Ct. R., Doc. 10, #133 (appeal brief); Doc. 10-3, #311 (plea hearing transcript)), Raines appealed shortly thereafter. In that appeal, he argued (1) ineffective assistance of trial counsel, (2) that his plea was involuntary, and (3) that the trial court imposed an unlawful sentence. (Doc. 10, #136). The Ohio Fourth District Court of Appeals affirmed. *State v. Raines*, 252 N.E.3d 162, 168 (Ohio Ct. App. 2024). After that, Raines sought discretionary review

in the Ohio Supreme Court without success. *State v. Raines*, 246 N.E.3d 530 (Ohio 2024) (Table).

Raines then sought habeas relief in this Court, proceeding pro se. To that end, Raines filed a Motion for Leave to Proceed in forma pauperis (Doc. 1), attaching his habeas petition, (Doc. 1-1). That same day, the Magistrate Judge granted the IFP motion, (2/7/25 Not. Order), and ordered Raines' habeas petition filed as a separate docket entry, (Doc. 3). After a Return of Writ (Doc. 11), and a Traverse (Doc. 15), the Magistrate Judge issued his R&R (Doc. 16).

Raines' habeas petition asserts three grounds for relief. First, he renews the ineffective assistance of trial counsel challenge that the state appeals court rejected. (Doc. 3, #34). Second, Raines asserts a due process violation based on allegations that his plea was involuntary and unknowing. (*Id.* at #36). And third, to get around the procedural default problem that bedevils his first ground (described in more detail below), he contends that his appellate counsel was ineffective in presenting his first ground to the Ohio Supreme Court. (*Id.* at #37).

While these claims are standard fare in a habeas action, appreciating Raines' position requires a good deal of additional context. As it turns out, all—including the state—agree that the protection order indictment charged Raines with violating the *wrong* subsection of Ohio Revised Code § 2919.27, which is Ohio's statutory provision on "[v]iolating a protection order." (*See* Doc. 11, #396; Doc. 15, #425); *Raines*, 252 N.E.3d at 173 ("The State concedes that Raines was 'indicted under the wrong charging theory.'"). The February 15, 2023, indictment charged Raines with three

counts under § 2919.27(A)(2). (Doc. 10, #60–61, 63). That provision covers any defendant who "recklessly violate[s] the terms of" "[a] protection order issued pursuant to section 2151.34, 2903.213, or 2903.214 of the Revised Code." Ohio Rev. Code § 2919.27(A)(2). But the protection order that the state charged Raines with violating had issued under § 2919.26, rather than any of the three above-mentioned sections. *Raines*, 252 N.E.3d at 173. So the grand jury *should* have charged Raines under § 2919.27(A)(1), which proscribes any reckless violation of "[a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code." *Id.*

To be clear, this charging defect is old news. Indeed, it formed the basis for his ineffective assistance argument on appeal to the Fourth District. There, Raines argued that his trial counsel was defective in two respects. First, Raines said that his counsel failed to notice that Raines was indicted under the wrong statutory subsection. *Id.* at 172. And second, Raines argued that the oversight deprived him of a "complete defense" to liability. *Id.* To be clear, Raines did not "dispute that he violated [the protection] order on three occasions." *Id.* But he *did* dispute the validity of that underlying order. *Id.* Specifically, he argued that he did not receive a statutorily required hearing under § 2919.26, the provision under which the protective order issued. *Id.* And without that hearing, he argued, a protection order will not stand under *State v. Finley*, 767 N.E.2d 302, 304 (Ohio Ct. App. 2001) (holding that a hearing is necessary for conviction under the protection order statute). So to sum up: Raines' position in the Fourth District was that he was charged under the

4

wrong statutory provision, and that the correct charge would have allowed him to press the "complete defense" of an invalid protection order.

Moreover, this shortcoming had alleged implications for another of Raines' assignments of error in the Fourth District. As already noted, Raines contended that his counsel was ineffective for failing to spot the charging error. *Raines*, 252 N.E.3d at 172. But in a separate assignment of error, he argued that the same oversight rendered his plea involuntary under due process standards. *Id.* at 176–77.[1]

On the ineffective assistance front, the Fourth District declined to probe the legal merits of *Finley*. *Id.* at 175. Rather, the court rejected Raines' *factual* premise because the protection order itself stated that a hearing had occurred on December 21, 2022. *Id.* at 175–76; (Doc. 10, #210–11 (protection order)). So, without addressing whether Raines was right on the law, the Fourth District concluded that his claim for ineffective assistance of trial counsel failed because Raines could not show prejudice. *Raines*, 252 N.E.3d at 176. That is, he had received the hearing to which he argued he was entitled, so he could not rely on the lack of such a hearing to show the protective order was invalid.

The Fourth District's treatment of Raines' second assignment was a bit more involved. Raines argued that he admitted guilt based on a flawed understanding of the law. *Id.* at 177. And that, he said, undermined the voluntariness of his plea. *Id.* It appears, though, that Raines' principal legal basis for this argument in the Fourth District—the Supreme Court's decision in *Bousley v. United States*, 523 U.S. 614

---

[1] Raines' third and final assignment of error is not relevant to this habeas action, so the Court does not describe it.

(1998)—appeared for the first time in a reply brief. *Id.* Because the case is central to understanding Raines' petition in this Court, the Court recounts it in some detail.

In *Bousley*, the petitioner had pleaded guilty to "using" a firearm under 18 U.S.C. § 924(c)(1). 523 U.S. at 616. Four years later, Bousley sought a writ of habeas corpus, challenging the factual basis of his plea on the ground that there was no "connection between the firearms in the bedroom of [his] house, and the garage, where … drug trafficking occurred." *Id.* at 617. A magistrate judge recommended dismissal, finding that there was a factual basis for the plea "because the guns in petitioner's bedroom were in close proximity to drugs and were readily accessible." *Id.* The district court agreed, and Bousley appealed. *Id.* While that appeal was pending, the Supreme Court handed down *Bailey v. United States*, which held that "§ 924(c)(1)'s 'use' prong requires the Government to show 'active employment of the firearm.'" *Id.* at 616 (quoting *Bailey v. United States*, 516 U.S. 137, 144 (1995)).[2] That is, to show "use" under *Bailey*, the state needed to show "brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm." *Bailey*, 516 U.S. at 148. Simply possessing a firearm doesn't cut it. *Bousley*, 523 U.S. at 617 (citing *Bailey*, 516 U.S. at 143). Relying on *Bailey*, Bousley's court-appointed appellate counsel argued that Bousley's plea was not knowing and voluntary because the district court conflated "use" with mere "possession," and therefore misinformed Bousley as to a critical element of the charge. *Id.* at 617–18. The Eighth Circuit

---

[2] In response to *Bailey*, Congress amended the statute to add possession to subsection (c)'s list of proscribed acts. *Barrett v. United States*, 607 U.S. 128, 135 n.6 (2026).

rejected that argument and affirmed the district court. *Id.* at 618 (citing *Bousley v. Brooks*, 97 F.3d 284 (8th Cir. 1996)).

The Supreme Court then granted certiorari and reversed. *Id.* at 618, 624. But that reversal did not result in an automatic vacatur of Bousley's conviction. Although Bousley challenged his *sentence* on direct appeal from his conviction, he did not contest the validity of his plea in that context. *Id.* at 621. And that failure meant that Bousley procedurally defaulted the claim. *Id.* So the Court remanded, giving Bousley an opportunity to attempt to overcome the procedural default by demonstrating actual innocence. *Id.* at 623–24.

How did Raines contend that *Bousley* applied here? Well, in the Fourth District, Raines relied on *Bousley* to argue that the state's charging error rendered his plea invalid. *Raines*, 252 N.E.3d at 177. Specifically, he argued that "under *Bousley*, [the error] shows a Due Process violation because his plea was not entered knowingly and voluntarily." *Id.* (cleaned up).

The Fourth District disagreed. Despite the error, the Fourth District concluded that Raines "understood the nature" of the protection order charges. *Id.* at 179. In support of that conclusion, the Fourth District pointed out that Raines (1) received a copy of the indictment prior to pleading guilty, (2) had defense counsel who informed him of the elements of the offenses, (3) represented to the trial court that he understood both the elements of the offenses and the nature of the charges, and (4) declined to ask any further questions at the hearing. *Id.* at 179–80.

7

To the extent that Raines was arguing that the charging error deprived him of a defense, the Fourth District responded that "it is well-settled that there is no requirement under Crim. R. 11(C)(2) that trial courts apprise defendants of available defenses when accepting a change of plea." *Id.* at 180 (quoting *State v. Phillips*, 2012-Ohio-5950, ¶ 31 (3d Dist.)). "And to the extent Raines implie[d] his plea was not knowing, voluntary, or intelligent due to defense counsel's ineffectiveness … Raines has not demonstrated a reasonable probability that but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Raines then tried to persuade the Ohio Supreme Court to review his case. In his memorandum in support of jurisdiction, he presented three grounds for appeal, one of which is relevant here:[3]

> Proposition of Law No. I: When it is undisputed the defendant is legally innocent of an offense, but the defendant, trial counsel, prosecutor, and trial court fail to understand the legal flaw in the charging theory, the defendant's guilty plea is neither knowing nor intelligent and must be vacated without a showing of prejudice.

(Doc. 10, #274). As noted, the Ohio Supreme Court declined jurisdiction. *Raines*, 246 N.E.3d at 530.

With that context, turn back to the present habeas petition. Again, Raines asserts three grounds for relief: (1) ineffective assistance of trial counsel, (2) a constitutionally infirm plea, and (3) ineffective assistance of appellate counsel. (Doc. 3, #34, 36–37). The Magistrate Judge determined that the first ground for relief is

---

[3] Like Raines' third assignment of error in the Fourth District, *see* supra note 1, the other two grounds concerned Raines' sentence, which is not at issue in this habeas matter, (*see* Doc. 10, #274).

8

procedurally defaulted. (Doc. 16, #441). All agree that he had presented that claim to the Fourth District, but the Magistrate Judge noted that to avoid default a defendant must also present the claim to the Ohio Supreme Court. (Doc. 16, #439–40). And, while Raines claims that he did so, (*see* Doc. 15, #416 (asserting that the claim was "necessarily implied" in the "record presented to the Supreme Court")), the Magistrate Judge disagreed, (Doc. 16, #439). True, in his memorandum in support of jurisdiction to the Ohio high court, Raines generally asserted that "the defendant, trial counsel, prosecutor, and trial court fail[ed] to understand the legal flaw in the charging theory." (Doc. 10, #279). But the Magistrate Judge concluded that this broad assertion did not "fairly present[]" the Ohio Supreme Court with the opportunity to remedy any alleged violation of the right to effective trial counsel because a mere reference to Raines' "trial counsel" in an enumerated list is not enough to properly raise the issue. (Doc. 16, #439–40). Further, Raines' memorandum in support of jurisdiction "never mentions ineffective assistance of trial counsel as the cause of [Raines'] allegedly invalid plea, nor does he cite any precedent on that issue." (*Id.* at #438–49; *see* Doc. 10, #279–80).

In an attempt to get around that procedural default problem, Raines relies on his third ground for relief—ineffective assistance of appellate counsel. (Doc. 3, #37). But, in the Magistrate Judge's view, that argument is unavailing because that theory will excuse a procedural default only if the ineffective assistance occurs in a proceeding in which the appellant is entitled to counsel under the Sixth Amendment. (Doc. 16, #440). And the right to counsel extends only to a first appeal of right, not to

9

discretionary appeals to the Ohio Supreme Court. (*Id.* at #440, 447–48). So the Magistrate Judge rejected both grounds one and three. (*Id.*).

That left Raines' second ground—the validity of Raines' plea. The Magistrate Judge reproduced the Fourth District's analysis of this issue in a lengthy block quote. (*Id.* at #441–46). Because the Fourth District decided this issue on the merits, the Magistrate Judge applied the deferential standard of review required under 28 U.S.C. § 2254(d). (*Id.* at #446 ("When a state court decides on the merits a federal constitutional claim later presented to a federal habeas corpus court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court." (citations omitted))). The Magistrate Judge rejected the notion that the Fourth District's reasoning cleared that high bar, asserting that, under *Bousley*, "actual innocence means factual innocence, not mere legal insufficiency." (*Id.* at #447 (citation omitted)).

Raines responded with thirteen pages of objections, (Doc. 19), which prompted the Court to issue a recommittal order, (Doc. 20). The Magistrate Judge then issued the Supplemental R&R, which rejected Raines' arguments and largely adhered to the reasoning the Magistrate Judge offered in the first instance. (Doc. 21). Raines then filed a second set of objections. (Doc. 24). And with that, the matter is ripe for review.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b)(3), "district courts review a[] [report and recommendation] de novo after a party files a timely objection." *Bates v.*

*Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at \*1 (S.D. Ohio July 5, 2023). But that de novo review requirement extends only to "any portion to which a proper objection was made." *Id.* (citation omitted). In response to such an objection, "the district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* (quoting *Richards v. Colvin*, No. 2:12-cv-748, 2013 WL 5487045, at \*1 (S.D. Ohio Sep. 30, 2013)) (cleaned up).

By contrast, if a party makes only a general objection, that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A litigant must identify each issue in the report and recommendation to which he objects with sufficient clarity for the Court to identify it, or else the litigant forfeits the Court's de novo review of the issue. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citation omitted) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That said, Raines is proceeding pro se. A pro se litigant's pleadings should be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require lenient treatment of substantive law, and the liberal standards that apply at the pleading

11

stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

For any unobjected portions of an R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

## LAW AND ANALYSIS

Because Raines lodges specific objections to the Magistrate Judge's analysis, the Court reviews Raines' objections de novo. *Bates*, 2023 WL 4348835, at *1. But even considering the issues anew, the Court concludes that Raines is not entitled to relief.

**A.   Raines' Claim for Ineffective Assistance of Trial Counsel is Procedurally Defaulted Because He Did Not Fairly Present It to the Ohio Supreme Court and He Cannot Do So Now; nor Does His Ineffective Assistance of Appellate Counsel Claim Excuse the Default.**

The Magistrate Judge correctly determined that Raines procedurally defaulted his claim for ineffective assistance of trial counsel. (Doc. 16, #438–41).

As a condition precedent to federal habeas review, a petitioner must first exhaust available state court remedies. 28 U.S.C. § 2254(b). A petitioner has not exhausted his state remedies if he "has the right under the law of the State to raise, by any available procedure, the question presented." *Id.* § 2254(c). Generally, exhaustion requires that "state prisoners … give the state courts one full opportunity

12

to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). That includes a state high court with the power of discretionary review. *Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015) (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). To fairly present a federal constitutional issue to a state court, a petitioner must state both the legal and factual basis for the claim. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).

Beyond that, if a petitioner once had an avenue for relief in state court, but he declined to pursue it and that avenue is no longer open due to a procedural issue, for example, a failure to appeal within the required time, then the claim is procedurally defaulted. *Hall v. Mays*, 7 F.4th 433, 443 (6th Cir. 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006)). The basic idea is that the procedural bar serves as an adequate and independent state ground, precluding habeas relief. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A petitioner can rely on a procedurally defaulted claim in habeas, but only if he can clear a substantial hurdle: "To overcome a procedural default … a petitioner must 'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Hall*, 7 F.4th at 443 (cleaned up) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Here, Raines failed to exhaust his ineffective assistance of trial counsel claim, so that claim is now procedurally defaulted, and he cannot overcome the procedural default. Let's take them in order.

### 1. Raines Did Not Fairly Present His Ineffective Assistance of Trial Counsel Claim to the Ohio Supreme Court.

First, Raines did not fairly present his ineffective assistance of trial counsel claim in his memorandum in support of jurisdiction to the Ohio Supreme Court. The words "ineffective assistance of counsel" did not even appear in the pertinent portion of the memorandum. (*See* Doc. 10, #279–80). Nor did the memorandum cite a single case that addresses ineffective assistance. (*See id.*). Rather, the cases Raines cited go to the voluntariness of his plea. *See Boykin v. Alabama*, 395 U.S. 238 (1969); *State v. Engle*, 660 N.E.2d 450 (Ohio 1996); *State v. Bryant*, 2012-Ohio-3189 (4th Dist.); *United States v. Brown*, 117 F.3d 471 (11th Cir. 1997);[4] *Bousley*, 523 U.S. 614. So, because Raines failed to fairly present the issue to the Ohio Supreme Court, he has failed to exhaust it.

### 2. Raines Can No Longer Press that Unexhausted Claim in State Court.

Not only did Raines fail to exhaust, but his claim is now procedurally defaulted. That is because he clearly could have raised it in the Ohio Supreme Court (just as he had raised it in the Fourth District), but he failed to do so. He cannot now re-file for

---

[4] *Brown* comes the closest in this regard, but Raines' reliance on the case still does not amount to a fair presentation of the issue. In a single footnote, the *Brown* court noted that Brown's petition *might* "be read to state additional grounds, such as ineffective assistance of counsel," but then declined to consider any such issues. 117 F.3d at 474 n.2. That, of course, is not enough.

14

appeal there (and in any event, the time to do so has long passed). And res judicata bars him from raising the claim in any other state forum. *Whitman v. Gray*, 103 F.4th 1235, 1239 (6th Cir. 2024) ("Ohio law requires that claims must be raised on direct appeal if possible; otherwise, res judicata bars their litigation in subsequent state proceedings." (citations omitted)). Moreover, it is well-settled law that Ohio's res judicata doctrine constitutes an independent and adequate state bar in federal habeas. *Wilson v. Collins*, No. 21-3596, 2022 WL 2388432, at *2 (6th Cir. Apr. 15, 2022) (citing *Hanna v. Ishee*, 694 F.3d 596, 614 (6th Cir. 2012)). So the claim is procedurally defaulted.

### 3. Raines' Cannot Overcome His Procedural Default.

In an effort to get around the procedural default, Raines places the blame on his appellate counsel, arguing that appellate counsel's ineffective assistance in the Ohio Supreme Court excuses the default. (Doc. 19, #452–55, 460–63). Specifically, he contends that appellate counsel was ineffective in failing to fairly present his ineffective assistance of trial counsel claim to that court. (*Id.*). But the argument doesn't work.

To excuse a procedural default, a petitioner must show (1) cause for the default, and (2) actual prejudice. *Young v. Westbrooks*, 702 F. App'x 255, 259 (6th Cir. 2017) (citing *Maples v. Thomas*, 565 U.S. 266, 280 (2012)). In fairness to Raines, "[i]neffective assistance of appellate counsel, if it rises to the level of a constitutional violation, can serve as cause to excuse the procedural default of claims brought in a habeas corpus proceeding." *Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004) (citing

15

*Buell v. Mitchell*, 274 F.3d 337, 351–52 (6th Cir. 2001)). Importantly, though, "[t]here can be a constitutional claim of ineffective assistance of counsel only at a stage of the proceedings when there is a right to counsel under the Sixth Amendment." *Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 433 (6th Cir. 2006) (citation omitted). And it is "well established" that a petitioner "has no Sixth Amendment right to counsel in connection with [a] discretionary appeal to the Ohio Supreme Court." *Bangera v. Wainwright*, 1:19-cv-33, 2021 WL 8342881, at *6 (N.D. Ohio Aug. 5, 2021) (collecting cases). So Raines may not rely on allegedly ineffective assistance of appellate counsel in the Ohio Supreme Court to excuse the default of his ineffective assistance of trial counsel claim that occurred by Raines' failure to present his claim there.

Before pressing on to consider Raines' second ground, the Court briefly addresses some of the case law that Raines cites in support of his view. Raines quotes the Sixth Circuit's decision in *Ege v. Yukins* for the proposition that "[t]he Supreme Court has acknowledged that 'cause' may be established through a showing of counsel's ineffectiveness in failing to properly preserve a claim for review in state court." (Doc. 19, #453 (emphasis omitted) (quoting *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007)). But that selective quotation leaves out the next sentence: "'Not just *any* deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution'—in Ege's case, her *Sixth Amendment right to a fair trial.*" *Ege*, 485 F.3d at 378 (emphasis added) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)). But, as established above, Raines'

16

Sixth Amendment right *does not attach* to representation in the Ohio Supreme Court. So *Ege* is no boon to Raines here.

Next, Raines quotes the Sixth Circuit's decision in *Hall v. Vasbinder* for the proposition that "[a]n argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel. The latter must meet the higher AEDPA standard of review, while the former need not." (Doc. 19, #453 (quoting *Hall v. Vasbinder*, 563 F.3d 222, 236–37 (6th Cir. 2009))). But "the higher AEDPA standard of review," *Hall*, 563 F.3d at 237, refers to the deferential merits review rule articulated in the statute, *see* 28 U.S.C. § 2254(d). And contrary to what Raines' argument implies, the Magistrate Judge did not apply that standard to his ineffective assistance of appellate counsel claim. (*See* Doc. 16, #440–41). So that argument misses the mark, too.

Finally, Raines quotes the Supreme Court's decision in *Martinez v. Ryan* for the proposition that "[i]nadequate assistance of counsel at [the States Highest Court] (sic) proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." (Doc. 19, #454 (quoting *Martinez v. Ryan*, 566 U.S. 1, 9 (2012))). But the flaw in that argument lies in Raines' bracketed language, "the States Highest Court" (sic). (*Id.*). What the quote actually says is that "[i]nadequate assistance of counsel at *initial-review collateral proceedings* may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," and that is true only when the state's procedural rules bar a criminal defendant from raising the latter claim on direct review and instead channel all such claims into collateral

17

review proceedings in the first instance. *Martinez*, 566 U.S. at 4, 9 (emphasis added). Arizona—whose procedures were at issue in *Martinez*—is one such state. *Id.* at 4. But Ohio is not. Indeed, as already discussed, Raines *did* present his ineffective assistance of trial counsel claim to the Fourth District. *Raines*, 252 N.E.3d at 172–76. In other words, the rule from *Martinez* applies where the state collateral proceeding constitutes a defendant's first opportunity to press the ineffective assistance of trial counsel claim. But Raines had, and indeed availed himself, of the opportunity to press the claim on direct appeal to the Fourth District. So the case lends no support whatsoever to Raines' position. Indeed, consistent with several sister circuits, the Sixth Circuit has generally refused to expand *Martinez* beyond its narrow holding. *See Moore v. Mitchell*, 708 F.3d 760, 784 (6th Cir. 2013) (collecting cases).[5]

---

[5] The Sixth Circuit has recognized one exception in cases involving Ohio prisoners. In *White v. Warden, Ross Correctional Institution*, the Sixth Circuit, drawing on the Supreme Court's post-*Martinez* decision in *Trevino v. Thaler*, 569 U.S. 413 (2013), recognized that *Martinez* can apply in Ohio where the ineffective assistance of trial counsel claim could not be meaningfully raised on direct review because of an insufficient record. *White v. Warden, Ross Corr. Inst.*, 940 F.3d 270, 277–78 (6th Cir. 2019). In that case, "Ohio effectively requires defendants to raise ineffective-assistance claims in post-conviction petitions" because "Ohio law makes it 'virtually impossible' for defendants to meaningfully raise an ineffective-assistance-of-trial-counsel claim on direct appeal if the claim relies on evidence outside the record." *Id.* at 277 (quoting *Trevino*, 569 U.S. at 417). But *White* does not affect the analysis here at all. Raines *did* successfully raise his ineffective assistance of trial counsel claim on direct appeal, and the Fourth District rejected it on the merits. *See Raines*, 252 N.E.3d at 172–76. And *White* aside, the Sixth Circuit has "not yet decided whether *Trevino* and *Martinez* apply to Ohio cases generally," and has noted that the application of those decisions to standard "Ohio ineffective-assistance claims is neither obvious nor inevitable." *Mammone v. Jenkins*, 49 F.4th 1026, 1048 (6th Cir. 2022) (citations omitted). So, to the limited extent that the Sixth Circuit *has* extended *Martinez*, that extension is of no help to Raines here.

18

In short, Raines' ineffective assistance of trial counsel claim (Ground I) is procedurally defaulted. And his ineffective assistance of appellate counsel claim (Ground III), which Raines relies on to circumvent the procedural bar, fails because Raines had no Sixth Amendment right to counsel in the Ohio Supreme Court. But that in turn also means he cannot rely on that claim to overcome the procedural default on Ground I.[6]

**B.      Raines' Due Process Voluntariness Claim Fails Because Any Assumed Constitutional Error is Harmless.**

Having rejected Raines' first and third grounds for relief, the Court considers his second. It, too, fails to pass muster.

As detailed above, the Fourth District decided Raines' due process voluntariness claim on the merits. *Raines*, 252 N.E.3d at 176–180. So, if the Court were to consider the claim on the merits, it would apply the deferential standard of review articulated in 28 U.S.C. § 2254(d). Under that standard, a court may grant habeas relief only if the state court's adjudication of the claim either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the

---

[6] Throughout both sets of objections, Raines also argues that he "had no control over what [his appellate counsel] filed to the Supreme Court, leaving out the crucial claim in question." (Doc. 24, #478 (emphasis omitted); *see also* Doc. 19, #452 ("T[he] [memorandum in support of jurisdiction] was not shared with Mr. Raines prior to filing")). But Raines is, of course, bound by his counsel's choices on what to present and what not to. Raines also sprinkles in some policy, citing, for example, former Judge Kozinski's view that "AEDPA is a cruel, unjust and unnecessary law … it should be repealed." (Doc. 24, #476 (citation omitted)). The Court will not separately consider these (and similar) frivolous and irrelevant contentions.

19

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

Absent the charging error in the indictment, there would be no doubt about the voluntariness of Raines' plea. First, Raines received a copy of the indictment charging him with violating a protection order. (*See* Doc. 10-1, #296). That alone gives rise to a presumption that he was informed of the nature of the protection order charge. *Bousley*, 523 U.S. at 618 (citations omitted). Second, Raines repeatedly and unequivocally affirmed that he understood those charges at his plea hearing. Raines admitted that he knew "what the plea agreement sa[id] [he was] pleading to." (Doc. 10-3, #324). He agreed that the information in the plea agreement was "the same information [he had] discussed with [his trial counsel]." (*Id*.). He confirmed, on the record, that he "read through" the pertinent documents. (*Id*.). He acknowledged that he "underst[oo]d the allegations in the[] four charges." (*Id*.). And he specifically admitted that he did not have "any questions about the elements of the offense of violating a protection order." (*Id*.).

Those statements give rise to a strong presumption that the plea was voluntary. *See Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). So too does trial counsel's representation that he explained the elements of the charge to Raines. (Doc. 10-3, #321); *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) ("Where a defendant is represented by competent counsel, the court usually may rely on that counsel's

assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.").

All of that notwithstanding, Raines says that *Bousley* requires a different result. Specifically, he quotes the following language: "[P]etitioner contends that the record reveals that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged. Were this contention proven, petitioner's plea would be, contrary to the view expressed by the Court of Appeals, constitutionally invalid." (Doc. 19, #457–58 (emphasis omitted) (quoting *Bousley*, 523 U.S. at 618)).

The Magistrate Judge rejected the argument by citing a different portion of *Bousley*—specifically, the Supreme Court's remark that "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623; (Doc. 16, #447). In the Court's view, however, that analysis misses the mark. In context, the *Bousley* Court's point was that Bousley could argue actual innocence to overcome a procedural default. *See Bousley*, 523 U.S. at 622–24. But Raines has not procedurally defaulted this ground for relief, so the passage has no bearing on this issue.

Nonetheless, rather than considering Raines' due process argument on the merits, the Court elects a different approach. Under the Supreme Court's decision in *Brecht v. Abrahamson* and Sixth Circuit precedent, a "harmless-error standard applies," 507 U.S. 619, 638 (1993), when a federal court considers habeas relief based on "non-structural" constitutional error, *O'Neal v. Balcarcel*, 933 F.3d 618, 625 (6th

21

Cir. 2019).[7] "And [the Sixth Circuit] has already held that an involuntary guilty plea does not amount to a structural constitutional defect." *United States v. Hall*, No. 19-5531, 2019 U.S. App. LEXIS 37968, at \*6 (6th Cir. Dec. 19, 2019) (citing *Ruelas v. Wolfenbarger*, 580 F.3d 403, 410–11 (6th Cir. 2009)). So the Court proceeds straight to the harmless-error analysis. *See Brown v. Davenport*, 596 U.S. 118, 138–39 (2022) ("If a federal court determines that a habeas petition fails because of *Brecht*, there is no need to prolong the matter by formally applying AEDPA." (cleaned up)).

Against that backdrop, a court may grant habeas relief only if there is "grave doubt" as to whether the (here assumed) error had a "substantial and injurious effect or influence" on the outcome. *O'Neal*, 933 F.3d at 624 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). "Grave doubt about whether the error was harmless means that the matter is so evenly balanced that the court feels itself in virtual equipoise as to the harmlessness of the error." *Id.* (cleaned up) (quotation omitted).

Here, Raines suggests that if he were charged under the correct subsection, he would have proceeded to trial on the theory that the order itself was invalid because it was issued without a statutorily required hearing. (*See* Doc. 15, #425–26). But for two reasons, this argument does not bring the Court anywhere near the "virtual equipoise" that is necessary for the Court to order Raines' requested relief. *O'Neal*, 933 F.3d at 624.

---

[7] Harmless error is a waivable defense in federal habeas. *Simpson v. Warden, Warren Corr. Inst.*, 651 F. App'x 344, 359 (6th Cir. 2016) (citations omitted). But though the Magistrate Judge did not address the issue in the R&R, the state had raised it, so it is not waived. (Doc. 11, #404–06).

22

The first is factual: there is simply nothing in the record (other than Raines'

post-conviction say so) to suggest that he did not receive a hearing on the protection

order. Indeed, if anything, the record strongly suggests the contrary. As already

noted, the protection order *itself* states that a hearing occurred. (Doc. 10, #154

("DVTPO hearing on Alleged Victim's Motion for a Domestic Violence Temporary

Protection Order.")). It also states that Raines "was provided with reasonable notice

and opportunity to be heard." (*Id.* at #153). Further, on the signature line where

Raines should have signed his name to acknowledge service of the protection order,

there is a scribbled notation indicating that Raines "refused to sign." (*Id.* at #157).

The Fourth District's opinion also provides crucial context here:

> Raines suggests the municipal court docket proves the trial court did not conduct a hearing. It is true that the docket does not indicate that the trial court scheduled a protection order hearing for December 21, 2022. However, the docket indicates that the arraignment hearing was scheduled for that date, and on that date, Raines entered a not guilty plea and was served with the protection order. The protection order indicates that the victim moved for a protection order and that the court conducted a hearing on the motion on December 21, 2022. These facts suggest the protected person requested a protection order at the arraignment hearing, and the court conducted a hearing on the request at that time.

*Raines*, 252 N.E.3d at 175. So, based on state court record alone, it is far from clear

that Raines had anything even approaching a "complete defense" under the proper

subsection. (Doc. 15, #425).

The second reason for the Court's skepticism is legal. Although he does not

seem to cite it here, Raines relied on *State v. Finley*, 767 N.E.2d 302 (Ohio Ct. App.

2001), a First District decision, to support his argument in the Fourth District, *see*

23

*Raines*, 252 N.E.3d at 172. And as that is the only colorable legal basis for Raines' no-hearing argument here, the Court briefly addresses it.

Admittedly, *Finley* did say, consistent with an earlier First District decision, that "a protection order is invalid [if] it is not issued in compliance with [Ohio Revised Code § 2919.26's hearing requirement]." 767 N.E.2d at 549 (citing *State v. Franklin*, No. C-544, 2001 WL 698107, at *2 (Ohio Ct. App. June 22, 2001)). But that proposition is far from settled law in the Ohio appellate courts. Other decisions treat protection orders issued without a hearing as *voidable*, not void. That is, they treat the failure to provide a hearing as a basis for seeking rescission, not as providing a legal defense if the party chooses simply to ignore the order. *See State v. Sutts*, 2004-Ohio-3541, ¶¶ 9, 11 (12th Dist.) ("[E]ven if a protection order is subsequently determined to be invalid, the defendant cannot avoid prosecution for deliberately disobeying the order before it is judicially rescinded …. Appellant had knowledge of the existence and scope of the protection order prior to his multiple, willful contacts with [the victim]. His convictions are consequently not against the manifest weight of the evidence."); *City of Reynoldsburg v. Eichenberger*, No. CA-3492, 1990 WL 52467, at *4 (Ohio Ct. App. Apr. 18, 1990) ("An order of the court must be obeyed unless and until a court finds it is invalid or rescinds it." (citation omitted)). And when Raines himself presented the Fourth District with this very argument, it expressly declined to take a position on *Finley*'s merits. *Raines*, 252 N.E.3d at 175 ("Even if we found [*Finley*] persuasive, Raines still has not shown that he has a complete defense.").

Against all that uncertainty, one must also balance what Raines gained from pleading guilty. The Fourth District aptly explained the powerful incentive that Raines had to enter the guilty plea:

> [C]ontrary to what Raines suggests, he benefitted from pleading guilty to the [Ohio Revised Code] § 2919.27(A)(2) charges. In exchange for his guilty pleas …two of Raines' other cases were dismissed at sentencing, and the State considered resolved "all charges, even unindicted ones pertaining to the two victims." The State also did not oppose a bond reduction to allow Raines to go to the Phoenix Center prior to sentencing, and the State did not make a specific sentencing recommendation to the trial court.

*Id.* at 176 (bracket omitted). That incentive would remain in place even if Raines were charged under and apprised of the proper statutory subsection.

Summing up, even assuming that Raines is right on the substance of the due process issue, rejecting the state's harmless-error argument would require the Court to (1) credit an interpretation of the underlying facts that is all but refuted by the record, (2) ignore that the pertinent point of state law is, at best, an open question in the Ohio courts, and (3) overlook the strong incentive that Raines had to accept the plea, even if he were charged under the correct subsection. That's a tall order, to put it mildly. And the Court refuses to put the state to the "arduous task" of retrying Raines based on his unsupported speculation that he would have chosen differently in light of the glaring flaws with his hypothetical defense theory. *Calderon v. Coleman*, 525 U.S. 141, 146 (1998).

Raines is not entitled to relief. The Court **DENIES** his Petition for Writ of Habeas Corpus (Doc. 3) **WITH PREJUDICE**.

25

## CONCLUSION

For the reasons above, the Court **ADOPTS** the R&R (Doc. 16), and Supplemental R&R (Doc. 21), as modified above. The Court **OVERRULES** Raines' Objections (Doc. 19; Doc. 24), and **DISMISSES** this matter **WITH PREJUDICE**. Consistent with that, the Court **DIRECTS** the Clerk to enter judgment and **TERMINATE** this matter on the Court's docket. The Court further **CERTIFIES** that any appeal from this Opinion and Order would not be taken in good faith.

**SO ORDERED.**

June 15, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**